UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GREGORY D. BOYD,<br><br>      Petitioner,<br>v.<br>DWIGHT NEVEN, *et al.*,<br><br>      Respondents. | Case No. 2:11-cv-01916-MMD-GWF<br><br>ORDER<br><br>(Respondents' Motion to Dismiss – dkt. no. 13) |

    This is an action on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by Petitioner, Gregory Boyd, who is represented by counsel.  Before the Court is Respondents' Motion to Dismiss (dkt. no. 13), Petitioner's Opposition (dkt. no. 19) and Respondents' Reply (dkt. no. 27).

**I.  PROCEDURAL BACKGROUND**

    Petitioner was charged on March 21, 2006, with one count of conspiracy to commit robbery and two counts of attempted robbery with the use of a deadly weapon, one count of conspiracy to commit murder, one count of murder with the use of a deadly weapon, and one count of attempted murder with the use of a deadly weapon. Ex. 9.[1] Petitioner was ultimately convicted on the murder related charges and acquitted on the robbery related charges. Ex. 36. Petitioner is currently serving various terms in prison including two consecutive terms of life with the possibility of parole after 20 years. Ex. 38.  The Judgment of Conviction outlining these sentences was entered on May 7, 2007. *Id.*

---

[1]The exhibits referenced in this Order were submitted by petitioner with his Amended Petition and are found in the Court's records at dkt. nos. 10 and 11 and in support of his Opposition to the Motion to Dismiss at dkt. no. 20. Exhibits referenced as "Res. Ex." were provided by Respondents in support of their Reply to the Motion to Dismiss and are found in the Court's records at dkt. no. 27.

The Nevada Supreme Court affirmed Petitioner's conviction on direct appeal in an order issued on January 27, 2009. Ex. 49. Petitioner then filed a state post-conviction petition on January 21, 2010. Ex. 58. The trial court denied relief (ex. 61) and the Nevada Supreme Court affirmed that denial on November 8, 2010 (ex. 64). Remittitur issued on December 3, 2010. Ex. 65.

The present federal action was initiated on November 30, 2011. Dkt. no. 1. Counsel was appointed and an amended petition was filed on June 1, 2012. Dkt. no. 9. The amended petition raises four grounds for relief. *Id.* Respondents move to dismiss the petition as untimely filed under 28 U.S.C. § 2244(d).

Respondents argue that the petition was filed more than one year after Petitioner's conviction became final. Petitioner argues that he is entitled to equitable and statutory tolling of the limitations period.

**II.   STATUTE OF LIMITATIONS**

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one year time limitation runs from the date on which a Petitioner's judgment becomes final by conclusion of direct review, or upon the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). The Ninth Circuit Court of Appeals has held that the "time for seeking direct review" under 28 U.S.C. §2244(d)(1)(A) includes the ninety-day period within which a Petitioner who was unsuccessful on direct appeal can file a petition for a writ of certiorari from the United States Supreme Court under Supreme Court Rule 13, whether or not the Petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

Further, a properly filed petition for state post-conviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2). The triggering date for the recommencement of the AEDPA limitations period after post-conviction review for Nevada prisoners is the Nevada Supreme Court's issuance of the remittitur, rather than the date it is received in the district court, or filed in the Nevada Supreme Court. *Duncan v. Walker*, 533 U.S.

1  167 (2001); *see also Gonzales v. State of Nevada*, 53 P.3d 901, 901-03 (2002);
2  *Glauner v. State*, 813 P.2d 1001 (1991).

3  Petitioner's conviction became final on April 27, 2009, ninety days after the
4  Nevada Supreme Court affirmed his conviction on direct appeal. *Bowen*, 188 F.3d at
5  1159. The one-year period commenced on that day and continued to run until
6  Petitioner filed his state post-conviction petition on January 21, 2010. This period
7  expended 269 days. However, the time during which the state post-conviction petition
8  was pending in the Nevada courts was tolled under the statute. *See* 28 U.S.C. §
9  2244(d)(2). When the Nevada Supreme Court issued its remittitur on post-conviction
10 review on December 3, 2010, the clock restarted. By the time Petitioner had filed his
11 federal habeas petition on November 20, 2011, another 352 days were expended.[2]
12 Thus, the federal petition was filed more than one year after Petitioner's conviction
13 became final and must be dismissed absent some statutory or equitable mechanism
14 which would toll the statute of limitations.

15 **III.   EQUITABLE TOLLING**

16 *Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001) contains a clear statement of the
17 basic law governing equitable tolling of the AEDPA statute of limitations:

18 > As we have previously held, "[w]hen external forces, rather than a
19 > Petitioner's lack of diligence, account for the failure to file a timely
> claim, equitable tolling of the statute may be appropriate." *Miles v.
> Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); see also *Calderon v.
20 > *United States Dist. Court (Kelly)*, 128 F.3d 1283, 1288-89 (9th Cir.
> 1997), *overruled on other grounds by Calderon v. United States*

---

[2]Generally, a prisoner is entitled to the benefit of the mailbox rule, which provides that the date on which a prisoner surrenders his petition (or other legal documents) to prison officials for mailing to the court is the date it is considered filed for purposes of federal statutes of limitations. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Campbell v. Henry*, 614 F.3d 1056, 1058-59 (9th Cir.2010); *Ramirez v. Yates*, 571 F.3d 993, 996 n.1 (9th Cir. 2009) (applying the prison mailbox rule specifically to determine the dates of pendency of a Nevada state petition for purposes of determine the amount of time tolled for purposes of federal law under § 2244(d)(2)); *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir.2002). As Respondents note, however, Petitioner did not provide the date when he submitted the petition to prison officials for mailing. *See* Petition (dkt. no.1), p. 1. Moreover, this point is rendered moot where the statute expired before the filing of the petition.

> *Dist. Court*, 163 F.3d 530 (9th Cir. 1998) (*en banc*) (Petitioner entitled to equitable tolling where Petitioner's counsel withdrew and left replacement counsel with unusable work product that made timely filing impossible); *Kelly*, 163 F.3d at 541-42 (Petitioner entitled to equitable tolling because the district court ordered a stay preventing Petitioner's counsel from filing a timely habeas petition and because Petitioner was allegedly mentally incompetent).

*See also Holland v. Florida*, 130 S.Ct. 2549, 2562-63 (2010).

The Ninth Circuit has made clear that equitable tolling is available in very limited cases. *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner may benefit from equitable tolling only "if extraordinary circumstances beyond [his] control make it impossible to file a petition on time." *Miranda*, 292 F.3d at 1066 (*quoting Calderon v. United Stated Dist. Court (Beeler)*, 1289 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (*en banc*))(emphasis in original). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda*, 292 F.3d at 1066 (*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.), *cert.* denied, 531 U.S. 878 (2000)).

Petitioner makes three arguments to support his equitable tolling request. First, he argues that his cognitive impairment is so severe that he was unable to personally understand the need to timely file his petition. Second, he argues that at some point during his incarceration he has been housed at the High Desert State Prison (HDSP), sometimes being housed in a segregated young offenders or school unit, which severely limited his opportunities to effectively use the law library and other assistance. Third, he argues that he was denied access to his court files for most of the first year after his conviction. Petitioner's second and third arguments are connected to his claim of mental impairment. The Court will therefore address the three arguments and the evidence presented together below.

///

///

4

**A.    Applicable Law**

A petitioner may be entitled to equitable tolling if he can show a mental impairment so severe that he was unable to personally understand the need to timely file a habeas petition or even the need to prepare the petition for filing, and that, despite his diligence, his mental impairment made it impossible under the totality of the circumstances to meet the filing deadline.  *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010).  *Bills* requires the Court to:

> 1) find the Petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing;
>
> 2) determine, after considering the record, whether the Petitioner satisfied his burden that he was in fact mentally impaired;
>
> 3) determine whether the Petitioner's mental impairment made it impossible to timely file on his own; and
>
> 4) consider whether the circumstances demonstrate the Petitioner was otherwise diligent in attempting to comply with the filing requirements.

628 F.3d at 1100-01.

Petitioner states that he suffered falls as a child that resulted in head and brain injuries; that he is cognitively impaired as evidenced by his low academic achievement levels in school and his "borderline illitera[cy]"and that the brain injury and cognitive impairment is accompanied by persistent depression and insomnia. He avers that various issues related to the health and financial well-being of his family during the relevant time period increased his depression which further limited his ability to prepare his federal petition.

Taken on their face, Petitioner's arguments offer a non-frivolous showing of a mental impairment during the pertinent time period. The impairment, as presented however, is not obviously severe, although Petitioner's claims suggest that possibility. Therefore, the Court finds that evidence offered to support the claim should be reviewed in order to establish the fact or refute it.  Thus, the Court shall move to the second step of its analysis under *Bills*.

### B. Relevant Evidence

To support his contentions, Petitioner offers various exhibits including medical records, public school records, prison housing records, various personal declarations and some correspondence between Petitioner and his former counsel. *See* Index of Exhibits (dkt. no. 20-1). To support their reply arguments, Respondents augment the record with exhibits including Adult High School transcripts and an equivalency certificate, exam scores, inmate book requests forms, prison operations procedures related to law library access and the personal declaration of a prison official. *See* Index of Exhibits, (dkt. no. 27 at 14).

#### 1. Medical Records

Petitioner's medical records show Petitioner suffered a skull fracture to his right temproparietal in 1990, from a fall down a flight of stairs when he was three years old. The results of the physicians' examination and a CT scan also indicate there was no intercranial injury, that he was in no acute distress and was able to move all of his extremities and behaved appropriately following the injury and that he suffered no nausea, vomiting or confusion. Ex. 69, at pp. 2-16.[3]

At age six, Petitioner suffered another blow to the head when he fell off of a swing and the swing struck him in the back of the head. The next day, Petitioner was taken for medical care when he was feverish and not as active as normal. *Id.* at 17. The exam revealed no areas of concern and Petitioner was sent home. *Id.* at 18-24. The following year, Petitioner was taken to the emergency room because he sustained a leg injury and head bump following a fall from his bicycle. *Id.* at 28-36.

#### 2. School Records

Petitioner's school health inventory evidences a child with normal vision, hearing and no known disabilities. Ex. 70, pp. 5-6. His sixth grade testing data indicates skills

---

[3]The exhibit page numbers referenced in this section are the electronic court file page number found at the top of each page.

6

1  well below average.  *Id.* at 9.  His tenth and eleventh grade transcripts state that he
2  failed all of his courses.  *Id.* at 12.  However, that same document shows he was able to
3  achieve average or better than average grades in his ninth grade course work.  *Id., see*
4  *also*, p. 16.  Petitioner's eighth grade achievement was also strong, as he received As
5  and Bs in all of his classes.  *Id.* at 18.  His standardized test scores were not exemplary;
6  he generally obtained scores lower than the fiftieth percentile.  *Id.* pp. 20-32.  It is of
7  note that Petitioner received a special services referral in 1995 in order to determine if
8  he had a learning disability or if "his skills [are] low due to poor attendance and lack of
9  parental support."  *Id.* at 36.  This referral came in the third grade and reflected a "low
10 average range of intelligence."  *Id.* at 51.  The evaluator believed Petitioner to be
11 functioning "significantly below" his intellectual potential in spelling, reading and math
12 and opined his lack of achievement was "primarily the result of excessive absenteeism."
13 *Id.*  Petitioner was found to not qualify for special education.  *Id.*

### 3. Declarations of Persons

15 Petitioner offers declarations of his father, his mother, an inmate law clerk and
16 his own declaration to support his arguments for equitable tolling.  Petitioner's father,
17 Gregory Boyd, declares that Petitioner informed him that he has relied on his fellow
18 inmates to help with Petitioner's legal case, that Petitioner believed the inmates to be
19 knowledgeable about what to do and that he had to pay the inmates for their help. Ex.
20 71.  Mr. Boyd avers that he has put several hundred dollars on Petitioner's books in
21 prison "with the understanding that some of that money would go toward paying other
22 inmates to help with the legal case."  *Id.*  He declares that since he lost his job in
23 January of 2011, he has had a difficult time "coming up with money to put on Greg's
24 books," and that this made Petitioner's life "behind bars" harder and caused Petitioner
25 worry.  Mr. Boyd finally avers that Petitioner's brother Joshua has had two surgeries in
26 2010, which also caused Petitioner concern and anxiety.  *Id.*

27 Petitioner's mother declares that in the "past few years "she has suffered health
28 issues, including surgeries, which have placed a "heavy burden on" Petitioner because

7

1    she has been unable to provide him with money or to visit him as often. Ex. 72. She
2    continues that the shooting injury of Petitioner's half-brother, D'Terrion, and the death of
3    his childhood friend, Cedric, have been very difficult on Petitioner. *Id.* She concludes
4    that Petitioner's attitude has changed for the worse with these "recent struggles" and
5    she believes he is depressed and getting more so every day. *Id.*

6    Petitioner's own declaration indicates that at the time he was sent to HDSP, he
7    had just turned twenty-years-old and "knew nothing about his right to file a writ of
8    habeas corpus" or the steps necessary to file a federal petition. Ex. 73, p. 1. He
9    declares he "could not have prepared my state and federal habeas petitions without the
10   prison law clerks" who told him what to write, including "exact sentences and
11   paragraphs." *Id.* Petitioner avers that he was misinformed by the inmate law clerks
12   about the amount of time he had to file his federal petition. *Id.*

13   Petitioner declares that between December 2008 and December 2011, he spent
14   "roughly" eight months in either a youth offender program or the prison school and that
15   "both housing programs are for inmates under 25 years old, and both segregate
16   younger inmates from the general prison population." *Id.* This circumstance meant that
17   he was unable to have access to the older, more experienced inmates to help him with
18   his habeas petitions, he avers, and his opportunities to visit law clerks in the law library
19   were limited to once a week for a "few hours."

20   Petitioner continues that sometimes he was unable to get on the library list and
21   sometimes the law clerks were all busy helping others. *Id.* Petitioner further avers that
22   he could not make use of the book request system because he "had no idea what to ask
23   for," making it difficult to work on his habeas petition. *Id.*

24   According to Petitioner's declaration, he had to buy the inmate law clerks food
25   and hygiene items in exchange for their help, spending approximately $70 for those
26   services. *Id.* When he had no money, he could not obtain law clerk assistance, and
27   when they did help him, they "did not ask [him] questions about [his] case or include
28   [him] in the preparation" of the petition. *Id.* Petitioner declares that he was sometimes

8

advised to look through the law books for cases like his own, but he "did not really understand what [he] read." *Id.*

Petitioner thereafter confirms the assertions of his mother and father relating to family stresses and finances and his depression. *Id.* p. 2. He describes the harsh circumstances of his family life during the ninth grade and states he suffers from headaches which sometimes make him dizzy. *Id.* Petitioner declares that he has been depressed since at least the tenth grade, when he dropped out of school. Finally, Petitioner declares that he has a hard time sleeping, concentrating and reading and understanding legal papers. *Id.*

Inmate Keith Brooks contributes his declaration in support of Petitioner describing Petitioner's inability to engage in his case and the legal proceedings, and opining that Petitioner has "zero understanding of the legal process." Ex. 74. He offers his "assessment" that Petitioner is "borderline illiterate," based on his personal experiences with Petitioner and his experience teaching a high school literacy class at the prison. *Id.* Brooks opines that Petitioner "could not have successfully completed" his state or federal petition without help from an experienced law clerk. *Id.* Finally, Brooks confirms the law library access constraints imposed at the HDSP, further opining that these "intellectual and institutional constraints explain" Petitioner's ignorance of the habeas processes. *Id.*

### 4. Other Documents

Petitioner provides a historical record of his bed assignments while incarcerated, presumably to support his contention that he spent time in the restrictive housing of the Young Offender Unit and prison school. However, Petitioner provides no information to assist the Court in identifying those time periods by identifying the unit number for the programs or by giving any other helpful information.

A letter from Petitioner's appeal counsel demonstrates that he was advised that the Nevada Supreme Court had entered its remittitur in his direct appeal. The remittitur issued on February 24, 2009, and the letter was dated March 11, 2009.

**5.     Rebuttal Evidence**

To rebut Petitioner's assertions and evidence, Respondents provide additional documentation including:

a.     Petitioner's Clark County Adult High School transcript, which evidences that Petitioner took various courses and earned course credits in February of 2009, in December of 2010, in May 2011 and in November and December of 2011. Res. Ex. 1. While many of Petitioner's grades were failing, he also earned As, Bs, and Cs in some of the more substantive courses.

b.     Petitioner's Certificate of High School Equivalency (res. ex. 2) indicates that Petitioner earned his high school equivalency certificate on the 14th of December, 2011.

c.     The 2011-2012 Nevada High School Proficiency Exam Scores for Petitioner (res. ex. 3) evidence a mathematics score of 180, which puts him in the below average ("approaching standard") category for test scores.  His science score of 316 put him in the "meets standard" category for science and he met the standards required for his writing examination as well.  *Id.*  Overall, Petitioner earned a passing score on his GED examination, although he achieved only a mid to lower percentile ranking.

d.     Inmate Book Requests and Inmate Request Forms submitted by Respondents indicate that Petitioner was able to fill out and obtain approval for book requests between 2007 to 2012.  Res. Ex. 4.  He was also able to process inmate requests including requests to visit the law library and for increases in his housing or security level and other issues, including a request to attend school, during that time period. *Id.*

e.     The declaration of Jennifer Nash, a correctional casework specialist for the Nevada Department of Corrections (NDOC), declares that, according to NDOC records, Petitioner attended school with the Youth Offender Program (YOP) inmates, but was never housed in the segregated unit of YOP. Res. Ex. 5. Ms. Nash also avers that the YOP inmates and those attending school with them were not restricted from

visiting the law library or conferring with adult inmate library assistance "in accordance with prison operating procedures." *Id.*

  f. NDOC and HDSP Operating Procedures (res. exs. 6, 7, 8), related to law library operations demonstrate that the scheduled times for all units are basically equal and that access to the law library is sought by filling out the proper form and then granted based on equity as well as urgency and other factors, according to the information provided by the inmate on his form. *Id.* The procedures also require that inmates who are unable to effectively make use of the law library are to be afforded additional assistance. *Id.*

### C. Statutory Tolling Conclusions Drawn from Record

Having reviewed the record provided by the parties, the Court concludes that Petitioner has not established that he suffers from a severe mental impairment. *See Bills*, 628 F.3d at 1100-01 (the district court must determine, after considering the record, whether the Petitioner satisfied his burden that he was in fact mentally impaired). The Court will consider Petitioner's three arguments in order.

#### 1. Cognitive and Mental Impairment

The medical records, standing alone, offer nothing to suggest that Petitioner suffered any long-term mental impairment or brain injury, such as he suggests. His childhood injuries were never raised as, or suspected of being, a cause of his below-average school performance. His school records demonstrate that he had the ability to perform much better than he did in most instances, but that his deficiencies were related more to his home situation and absenteeism. Petitioner was never assessed to be in need of special education and no disability was ever diagnosed by the school. Also, as Respondents note, Petitioner attended high school and high school equivalency classes at HDSP between 2009 and 2011 and he attained high enough scores to obtain his GED certificate. Thus, he has demonstrated an ability and willingness to read, write, and comprehend which undermines his and Mr. Brooks' claims that Petitioner is borderline illiterate.

11

Petitioner and his family have averred that his persistent depression was exacerbated by stress from his parents' inability to contribute financially, by his mother's and half-brother's health issues and by the death of a close friend. While these issues would quite normally and understandably cause an individual to feel unhappy, Petitioner has provided this Court with no independent evidence of depression or other mental health issues, such as inmates kites for mental health assistance or medical notes. Accordingly, there is no evidence that Petitioner raised his depression to medical personnel or had been observed by staff or medical personnel to be severely depressed. Moreover, the mere fact of incarceration, particularly for the term facing the Petitioner, is enough to cause an individual to be depressed.

Moreover, the Court finds that Petitioner's claim of mental impairment which would make it impossible for him to pursue his federal habeas remedies in a timely manner are unsupported by the evidence in the record before the Court. His limitations period ran between April of 2009 and when he filed his state petition in January of 2010, at a time when he was taking and passing high school classes and, therefore, able to read and write sufficiently to pursue those interests. It resumed in December of 2010 and expired March 9, 2011. During this period, Petitioner was able to continue the pursuit of his high school equivalency certificate. *See* res. exs. 1-3. His illiteracy and cognitive impairment arguments lack merit.

### 2. Access to Law Library and Other Assistance

NDOC staff Documents and declarations demonstrate that Petitioner was not actually housed in the segregated unit and that his access to the law library and to adult knowledgeable inmate law clerks would not have been impacted by his attending school with the young offenders group. Petitioner's allegations are not specific as to when he was housed in this segregated unit, they do not identify any specific times when he was denied access to the law library or when he could not effectively meet with law clerks for assistance. His bed assignment record, without more, provides no support. Without

///

evidence showing that his disputed housing situation made it impossible to timely file, equitable tolling is unavailable.

Petitioner also has not demonstrated the requisite diligence in pursuing his remedies. He does not provide specifics about when the circumstances existed that purportedly interfered with his efforts. *See e.g., Allen v. Lewis*, 255 F.3d 798, 800 -801 (9th Cir. 2001). He provides no specifics about his efforts to prepare and file his federal habeas petition, apart from filing a *pro se* motion in state court to obtain his trial records, or about his diligent but unsuccessful efforts to visit the law library or to obtain other legal assistance in preparing his federal petition between December of 2010 and March of 2011.

### 3. Access to Files

Petitioner's argument that he is entitled to equitable tolling because he was denied access to his court files for most of the first year after his conviction also fails to win him relief. Although denial of access to a Petitioner's legal files has been found to warrant equitable tolling, where the denied access occurred early in the limitations period, "it will normally be much more difficult for a Petitioner to demonstrate causation," because, with diligence, he would have time to overcome the "extraordinary circumstances" which caused his delay. *Allen*, 255 F.3d at 800; *see also Spitzen v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) ("'[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken.'") (*quoting Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.2000)); *Lott v. Meuller*, 304 F. 3d 918 (9th Cir. 2002)).

As Respondents point out, Petitioner had more than three months left of his one-year limitation period when his state post-conviction reviewed was finalized. With diligence, Petitioner could have prepared a federal petition which mirrored the state petition and filed it with the federal court in time. He offers no evidence of what he did during that 96-day period to diligently pursue his federal remedies.

13

Petitioner's arguments for equitable tolling fail to persuade the Court where the record does not support the arguments. He has not shown that he suffered from a severe mental impairment at the time his limitations clock was running. He has not shown that his cognitive skills or educational level were such that it was impossible for him personally to know of the need to file his federal petition in a timely manner or for him to personally ensure that the petition was prepared and timely filed. Petitioner is not entitled to equitable tolling on the record presented here. Nor has Petitioner demonstrated that he is entitled to an evidentiary hearing to develop facts that would entitle him to such relief.

## IV.  STATUTORY TOLLING

Petitioner's final argument is that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(B) which starts the limitations clock on the "date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Petitioner argues that his limitations clock should be tolled from June 21, 2011, the date he returned to the prison school and YOP to the date he actually mailed his *pro se* federal petition on November 22, 2011, because he was denied meaningful access to the courts due to the segregated housing conditions and severely limited law library access Petitioner purportedly suffered during that period.

This argument is unpersuasive because the evidence provided by Respondents refutes Petitioner's allegations that he was housed in segregation with the YOP or that his attendance in school would negatively impact his opportunities to go to the law library or to seek the assistance of adult knowledgeable law clerks. *Cf.* Declaration of Nash (res. ex. 5) and NDOC Procedures (res. exs. 6, 7 and 8) with Declaration of Boyd (ex. 73) and Historical Bed Assignment (ex. 75). Petitioner's inclusion of his bed assignment history, without explanation, and his sworn averment, without specifics as to times and duration of the housing assignment, undermines the value of this evidence and his argument. Moreover, where Petitioner's involvement in the school program

14

1  was voluntary (*see* res. ex. 4, ECF p. 15), it cannot be said that the State created this
2  impediment to Petitioner filing a timely petition.

3  Even more fatal to this argument is the fact that the statute of limitations had
4  already expired before the time Petitioner was returned to the YOP school program on
5  June 21, 2011. After the remittitur issued on post-conviction review, the limitation
6  period expired on March 9, 2011, three months before the time Petitioner argues he is
7  entitled to statutory tolling.

8  **V.     CONCLUSION**

9  Petitioner is unable to demonstrate that he is entitled to either equitable or
10 statutory tolling of the statute of limitations. He has not demonstrated that he suffered
11 from a severe mental impairment which made it impossible for him to file his federal
12 petition in a timely manner. He has failed in his efforts to show that he was denied
13 reasonable access to his legal files or to legal resources or advisors, and his allegations
14 are insufficiently specific to demonstrate that these events occurred at a time crucial to
15 the filing. He has not shown sufficient diligence in pursuit of his habeas remedies and
16 he is not entitled to statutory tolling of the limitations period because the one-year period
17 had already elapsed before the time he claims the state-created impediment existed.
18 The petition will be dismissed as untimely.

19 In order to proceed with an appeal from this Court, Petitioner must receive a
20 certificate of appealability. 28 U.S.C. § 2253(c)(1). Generally, a Petitioner must make
21 "a substantial showing of the denial of a constitutional right" to warrant a certificate of
22 appealability. *Id.* The Supreme Court has held that a Petitioner "must demonstrate that
23 reasonable jurists would find the district court's assessment of the constitutional claims
24 debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

25 ///
26 ///
27 ///
28 ///

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require Petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that Petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (*quoting Slack*, 529 U.S. at 484).

The Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and determines that none meet that standard. Accordingly, the Court will deny Petitioner a certificate of appealability.

IT IS THEREFORE ORDERED that the Motion to Dismiss (dkt no. 13) is GRANTED. The Amended Petition is DISMISSED WITH PREJUDICE AS UNTIMELY.

IT IS FURTHER ORDERED that no certificate of appealability is warranted and none shall issue.

The Clerk shall enter judgment accordingly.

DATED THIS 13th day of March 2013.

                    MIRANDA M. DU
                    UNITED STATES DISTRICT JUDGE